UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDWIN MORALES,<br><br>                        Plaintiff,<br><br>               -v.-<br><br>NEW YORK CITY TRANSIT AUTHORITY and MANHATTAN AND BRONX SURFACE TRANSIT OPERATING AUTHORITY,<br><br>                        Defendants. | 19 Civ. 7061 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

  Plaintiff brings this action against his employer, the New York City Transit Authority, and its subsidiary, the Manhattan and Bronx Surface Transit Operating Authority (together, the "NYCTA"), alleging that the NYCTA violated his Fifth and Fourteenth Amendment due process rights by failing to schedule an arbitration at which he could challenge disciplinary violations against him.  The NYCTA has moved to dismiss the complaint on the grounds that: (i) Plaintiff has not stated a claim under 42 U.S.C. § 1983 against the NYCTA, a municipal agency, because he has failed to allege that his injury was caused by a municipal policy or custom; (ii) Plaintiff improperly seeks to assert a Fifth Amendment claim against a state entity; (iii) Plaintiff has not identified a protected property interest within the meaning of the Fourteenth Amendment; and (iv) Plaintiff received constitutionally adequate due process.  For the reasons explained below, Plaintiff's complaint is dismissed without prejudice for its failure to allege municipal liability.

## BACKGROUND[1]

### A.    Factual Background

#### 1.    Plaintiff's Employment with the NYCTA and His Union's Collective Bargaining Agreement

Plaintiff is a Bus Mechanic who has been employed by the NYCTA since 1996. (Compl. ¶¶ 7-8). He is a member of the Transport Workers Union, Local 100 (the "Union"), which has a collective bargaining agreement (the "CBA") with the NYCTA. (*Id.* at ¶ 38). Pursuant to the CBA, and relevant to this action, there is a three-step process for NYCTA employees to appeal disciplinary charges against them. (*Id.*). At the first step, Step I, within five days of notification of the disciplinary action against him, the employee or his Union Representative may request, in writing, to be heard by the employee's Department Head or designee. (*Id.* at ¶ 39). This written request constitutes the employee's grievance or "appeal." (*Id.*).

The grievance must be scheduled to be heard within 15 days after the Department Head or designee receives the employee's written request. (Compl. ¶ 40). The employee may be accompanied at the meeting by his Union representative. (*Id.*). A decision on the appeal must be rendered within 10 days after the meeting. (*Id.*). If the employee is dissatisfied with the outcome

---

[1]    The facts in this Opinion are drawn from Plaintiff's Complaint ("Complaint" or "Compl." (Dkt. #1)), the well-pleaded allegations of which are taken as true for purposes of this motion. For ease of reference, the Court refers to Defendants' opening brief as "Def. Br." (Dkt. #20); Plaintiff's opposition brief as "Pl. Opp." (Dkt. #22); and Defendants' reply brief as "Def. Reply" (Dkt. #23).

of the grievance, then the employee progresses to the second step in the appeal process. (*Id.* at ¶ 41).

At the second step, Step II, within five days after receipt of the Department Head's decision, the employee or his Union representative may submit the dispute in writing to the NYCTA's Deputy Vice President for Labor Disputes Resolution or his designee. (Compl. ¶ 42). The appeal must be heard within 30 days after the receipt of the written request, and the Deputy Vice President for Labor Disputes Resolution or his designee must render his decision in writing within 20 days after the appeal hearings are concluded. (*Id.*).

If, after receiving the Step II decision, the employee wishes to appeal further, the employee or his Union representative may submit an appeal, in writing, to the Tripartite Arbitration Board within five days of notification of the Step II decision. (Compl. ¶ 43). This third and final step of the appeal process, Step III, is the arbitration. (*Id.* at ¶ 44). Per the terms of the CBA, the NYCTA is supposed to schedule the arbitration as soon as practicable. (*Id.* at ¶ 45).

The appeal and arbitration process, as laid out in the CBA, involves clear procedures with clear time frames so that employees may appeal and resolve grievances in an expedient and timely manner. (Compl. ¶ 47). Accordingly, throughout the arbitration process, the Union and the NYCTA may take the case off the arbitration calendar only one time and are entitled to only one adjournment of the case. (*Id.* at ¶ 46).

### 2. Plaintiff's Reported Harassment at Work

On or around November 2015, Plaintiff began to be bullied and harassed by one of his co-workers, Grease Todkey. (Compl. ¶ 9). Specifically, Plaintiff alleges that Todkey commented, in front of other co-workers, that Plaintiff was a homosexual, and made lewd and inappropriate homosexual jokes and comments to Plaintiff. (*Id.* at ¶¶ 10-11). Plaintiff told Todkey that the jokes and comments made him uncomfortable and asked him to stop, but Todkey persisted. (*Id.* at ¶ 11). The harassment and bullying continued for several months and, at one point, almost erupted in a physical altercation. (*Id.* at ¶ 12). Finally, in April 2016, Plaintiff filed a complaint with NYCTA's Equal Employment Opportunity ("EEO") Department, in which he faulted his supervisors for not intervening. (*Id.* at ¶ 14).

### 3. Plaintiff's Disciplinary Actions

Plaintiff believes that, in retaliation for filing the EEO complaint, his NYCTA supervisors took numerous groundless disciplinary actions against him. (Compl. ¶ 15). On May 12, 2016, Plaintiff's Line Supervisor ("L/S") Mathura instructed Plaintiff to adjust the air conditioning (or "A/C") belt on Bus 5833. (*Id.* at ¶¶ 16-17). Plaintiff explained to Mathura that he had back problems and needed a lift in order to work on the A/C belt. (*Id.* at ¶ 18). L/S Mathura told Plaintiff that there were no lifts and said that if Plaintiff's back prevented him from working, Plaintiff should go home sick, which is what Plaintiff did. (*Id.* at ¶ 19). On May 14, 2016, Plaintiff provided his supervisor with a doctor's note verifying his back problems. (*Id.* at ¶ 20).

In spite of this interaction with Mathura — in particular, Mathura's directive that Plaintiff go home sick — Plaintiff was written up for charges that included failure to comply with a direct order, insubordination, and being AWOL. (Compl. ¶ 21). According to the text of Plaintiff's Disciplinary Action Notification 16-3533-0007 ("DAN 0007"), Plaintiff told Mathura that he was refusing the job due to the fact that the bus was not set up on a lift. (*Id.* at ¶ 22). DAN 0007 further states that Mathura told Plaintiff that the task did not require a lift, but that Plaintiff refused the direction to complete the A/C belt adjustment on Bus 5833 and then went home. (*Id.*). For this alleged insubordination and failure to comply with a direct order, Plaintiff was given a proposed suspension of 10 days. (*Id.* at ¶ 24). Plaintiff appealed his 10-day suspension at a Step I hearing on May 16, 2016. (*Id.* at ¶ 25). His Step II hearing was completed on April 24, 2017. (*Id.*).

One week later, on May 24, 2016, Plaintiff was written up again by L/S Mathura ("DAN 0009"). (Compl. ¶ 26). According to Mathura, Plaintiff was assigned to recharge the A/C system of Bus 5612. (*Id.* at ¶ 27). After charging the A/C system, Plaintiff started the bus and the A/C compressor clutch caught on fire. (*Id.*). Plaintiff then turned off the bus. (*Id.*). L/S Mathura recalled Plaintiff stating that the clutch was no good and removing the gauges, which resulted in all the freon escaping onto the shop floor. (*Id.* at ¶ 28). This discharge of freon, in turn, resulted in all of the other mechanics being sent out of the shop until it was safe for them to return. (*Id.*). Plaintiff offers a different version of events: Although Plaintiff was written up for this incident and

5

deemed to be completely responsible for the fire and subsequent freon leak, he contends that when he was assigned the job of charging the A/C unit on Bus 5612, he was not informed that the A/C unit had been repaired by another mechanic on a prior shift because refrigerant was leaking, nor was he informed that the leak had not been repaired. (*Id.* at ¶ 29).

In the text of DAN 0009, Supervisor Anthony Hayes stated that the fire and freon leak were due to Plaintiff's improper charging procedures, which put Plaintiff and others at risk of serious injury. (Compl. ¶ 32). Hayes suggested that Plaintiff be dismissed. (*Id.*). When Plaintiff was notified of the disciplinary charges against him and the pending penalty of dismissal, he immediately appealed. (*Id.* at ¶ 33). By April 24, 2017, Plaintiff had completed Step II in the disciplinary appeal process. (*Id.*).

Then, on June 14, 2016, Plaintiff was notified and provided with DAN 16-3533-0010 ("DAN 0010") — his third disciplinary notification in two months — which charged him with making a false statement at his Step I hearing for DAN 0007. (Compl. ¶ 35). Specifically, DAN 0010 alleges that at Plaintiff's Step I hearing for DAN 0007, Plaintiff said that he never completed an A/C belt adjustment and alignment procedure on a Nova 60-LF-Arctic bus. (*Id.* at ¶ 36). However, an audit revealed that Plaintiff had completed several running inspections of that particular model of bus. (*Id.*). Plaintiff explains in his Complaint that although he was charged with making this false statement, what he actually said at the Step I hearing was that he had never done work on an A/C belt *without a lift*. (*Id.* at ¶ 37).

6

### 4. Plaintiff's Attempt to Exercise His Right to Arbitration Under the CBA

Despite the fact that the CBA's grievance process is intended to be streamlined and efficient, Plaintiff alleges that the NYCTA has prolonged the resolution of his case and stymied the advancement of his career. (Compl. ¶ 47). On April 24, 2017, the disciplinary charges and penalties assessed by the NYCTA against Plaintiff in DAN 0007, DAN 0009, and DAN 0010 were sustained at Plaintiff's Step II hearings. (*Id.* at ¶ 48). Plaintiff attempted to exercise his contractual right to arbitration in order to address these charges against him and clear his name. (*Id.* at ¶ 49). On three occasions, twice in 2017 and once in 2018, the NYCTA scheduled Plaintiff's arbitration. (*Id.* at ¶ 50). However, on all three occasions, the NYCTA adjourned the arbitration, and, as of June 22, 2020, the NYCTA has not rescheduled it. (*Id.*). Accordingly, Plaintiff has been unable to challenge the charges against him in arbitration, and a final resolution of the charges remains outstanding. (*Id.* at ¶ 51).

### 5. Plaintiff's Attempts at Promotion

In 2018 Plaintiff passed a promotional test for an NYC Transit supervisory position. (Compl. ¶ 52). But in early 2019, when the NYCTA reached Plaintiff's number on the list, Plaintiff was told that he would not be promoted because he had open disciplinary charges pending against him. (*Id.* at ¶ 53). Therefore, Plaintiff reasons, the NYCTA's failure to schedule Plaintiff's arbitration has prevented him from pursuing a promotion. (*Id.* at ¶¶ 54-55).

B.   **Procedural History**

Plaintiff filed the Complaint in this action on July 29, 2019. (Dkt. #1). On October 28, 2019, the NYCTA requested leave to file a motion to dismiss the Complaint. (Dkt. #12). Plaintiff filed a letter opposing the NYCTA's request for leave on October 31, 2019. (Dkt. #13). The Court held a pre-motion conference on November 26, 2019, at which time the Court set a schedule for Plaintiff to file an amended complaint and for the parties to brief the NYCTA's motion to dismiss. (Dkt. #21 (transcript)). On December 2, 2019, Plaintiff notified the Court that he would not be filing an amended complaint. (Dkt. #17 (the "December 2, 2019 Letter")). The NYCTA filed its motion to dismiss the Complaint and supporting declaration on January 6, 2020. (Dkt. #18-20). Plaintiff filed his brief in opposition to the motion to dismiss on February 21, 2020. (Dkt. #22). The NYCTA filed its reply brief on February 21, 2020. (Dkt. #23). The same day, the NYCTA filed a request for oral argument on their motion. (Dkt. #24; *see also* Dkt. #25 (endorsement)). For the reasons explained below, the Court can decide this motion on the papers.

## DISCUSSION

A.   **Applicable Law**

When a court considers a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), it must "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584

8

F.3d 82, 88 (2d Cir. 2009)) (internal quotation marks omitted). A plaintiff will survive a motion to dismiss if she alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge [a plaintiff's] claims across the line from conceivable to plausible." (internal quotation marks and citation omitted)).

The Court is not, however, bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (citation omitted); see also *Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks, brackets, and citation omitted)).

**B.     Analysis**

    **1.     Plaintiff Has Failed to Allege Municipal Liability**

While Plaintiff's Complaint does not explicitly state that he is bringing his due process claims via 42 U.S.C. § 1983, other documents in the record make clear his intent to do so. (*See* Pl. Opp. 2 (citing § 1983); *see also* Dkt. #2 (Civil Cover Sheet describing this case as "14th Amendment, 42 U.S.C. § 1983, violation of due process in government employment")). Indeed, § 1983 is the only vehicle through which Plaintiff could bring his constitutional claims. *See*

*Guadagni* v. *N.Y.C. Transit Auth.*, No. 08 Civ. 3163 (CPS) (SMG), 2009 WL 205050, at *4 (E.D.N.Y. Jan. 27, 2009) ("Although it is unclear from the complaint which of plaintiff's claims sounding in state tort law are also brought via 42 U.S.C. § 1983 as constitutional claims against the Transit Authority, plaintiff's [] claims under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution must be brought via § 1983[.]"), *aff'd*, 387 F. App'x 124 (2d Cir. 2010) (summary order); *Baker* v. *McCollan*, 443 U.S. 137, 144 n.3 (1979) ("[S]ection [1983] is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes.").

The NYCTA is a municipal agency for purposes of § 1983 jurisprudence. *See Bowles* v. *N.Y.C. Transit Auth.*, No. 00 Civ. 4213 (BSJ) (MHD), No. 03 Civ. 3073 (BSJ) (MHD), 2006 WL 1418602, at *7 n.14 (S.D.N.Y. May 23, 2006) (explaining that the "Transit [Authority], ... is a municipal corporation"); *Dean* v. *N.Y.C. Transit Auth.*, 297 F. Supp. 2d 549, 554 (E.D.N.Y. 2004) ("A § 1983 claim against a municipal agency such as the Transit Authority is cognizable where the alleged constitutional violation by TA employees resulted from either a government custom, policy, pattern or practice."); *Rumala* v. *N.Y.C. Transit Auth.*, No. 02 Civ. 3828 (SLT) (KAM), 2005 WL 2076596, at *9 (E.D.N.Y. Aug. 26, 2005) (quoting *Dean*, 297 F. Supp. 3d at 554); *see also Trump* v. *Deutsche Bank AG*, 943 F.3d 627, 639 (2d Cir. 2019) (referring to "the New York City Transit Authority" as an example of "a municipal agency"). Municipal agencies like the NYCTA are amenable to suit under § 1983, but cannot "be

held liable [] on a *respondeat superior* theory." *Monell* v. *Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); *see Perez* v. *Metro. Transp. Auth.*, 883 F. Supp. 2d 431, 436 (S.D.N.Y. 2012).

To state a claim for municipal liability — otherwise known as a *Monell* claim — a plaintiff must show that a violation of his constitutional rights resulted from a municipal policy or custom. *Monell*, 436 U.S. at 694. A plaintiff may establish such a violation in a number of ways, including by presenting evidence of

> [i] an express policy or custom, [ii] an authorization of a policymaker of the unconstitutional practice, [iii] failure of the municipality to train its employees, which exhibits a "deliberate indifference" to the rights of its citizens, or [iv] a practice of the municipal employees that is "so permanent and well settled as to imply the constructive acquiescence of senior policymaking officials."

*Biswas* v. *City of New York*, 973 F. Supp. 2d 504, 536 (S.D.N.Y. 2013) (quoting *Pangburn* v. *Culbertson*, 200 F.3d 65, 71-72 (2d Cir. 1999)); *accord Jones* v. *Bloomberg*, No. 14 Civ. 6402 (KPF), 2014 WL 4652669, at *2 (S.D.N.Y. Sept. 17, 2014) (dismissing § 1983 claim against the City of New York where "[t]he complaint lack[ed] any factual allegations suggesting the existence of an officially-adopted policy or custom that caused Plaintiff['s] injury" (internal quotation marks and alterations omitted)). Thus, in order to bring a § 1983 claim against the NYCTA, Plaintiff must allege that his constitutional violations are attributable to a municipal policy or custom. *See Rozenfeld* v. *MTA Bus Co.*, No. 13 Civ. 4847 (KPF), 2015 WL 1174768, at *4 n.5 (S.D.N.Y. Mar. 16,

2015) ("[A]s a subsidiary of a public authority (the MTA), MTS Bus can only be held liable under Section 1983 for constitutional violations attributable to a municipal policy or custom pursuant to *Monell*[.]"); *see also Rivera* v. *Metro. Transit Auth.*, 750 F. Supp. 2d 456, 463 (S.D.N.Y. 2010).

Plaintiff's Complaint fails to allege a municipal policy, custom, or practice. Indeed, in Plaintiff's December 2, 2019 Letter, he confirmed that he "ha[d] not alleged that Defendant maintains an unconstitutional policy or custom," but had rather alleged that "the actions pled [show] a deviation from policy or custom." (December 2, 2019 Letter). In consequence, the only theory of liability contained in Plaintiff's Complaint is that the NYCTA violated Plaintiff's due process rights by failing to timely schedule his arbitration in accordance with the CBA. (*See* Compl. ¶¶ 46, 50, 51; Pl. Opp. 2-3).[2] But an allegation that the NYCTA "failed to abide by its own rules and regulations … is the antithesis of a *Monell* claim." *Smith* v. *Town of Stony Point*, No. 13 Civ. 5000 (VB), 2014 WL 2217900, at *5 (S.D.N.Y. May 22, 2014); *see also Manon* v. *Pons*, 131 F. Supp. 3d 219, 239 (S.D.N.Y. 2015) ("Far from establishing that the municipal policy was the cause of any violation of her rights," plaintiff "suggests that it was Defendants' *deviation* from the policy that resulted in the violation of her rights. That cannot support a claim for municipal liability."

---

[2]  Plaintiff's brief states that he is challenging the "established practice of Defendants in delaying his arbitration." (Pl. Opp. 3). However, the allegations contained in the Complaint come nowhere close to establishing that the NYCTA has an established practice or procedure of delaying employees' arbitration. For example, the Complaint contains no allegations regarding the NYCTA scheduling (or failing to schedule) any other employee's arbitration.

12

(emphasis in original)); *Perez*, 883 F. Supp. 2d at 437 (dismissing § 1983 claim where plaintiff alleged "drug testing [] was contradictory to the" terms of the relevant CBA).

Undeterred, Plaintiff cites a group of cases in which courts have found that a plaintiff's due process rights were violated where the plaintiff was denied rights provided to him through a collective bargaining agreement or contract. (*See* Pl. Opp. 3). But, as even Plaintiff admits, those were cases brought against "municipal *employees*," and not the municipalities themselves. (*Id.* (emphasis added)). These cases do not address *Monell* liability in the context of a § 1983 claim against a municipality. *See Cleveland Bd. of Educ.* v. *Loudermill*, 470 U.S. 532, 547-48 (1985) (no discussion of *Monell* liability); *Mathews* v. *Eldridge*, 424 U.S. 319, 349 (1976) (same, and decided before *Monell*); *Coles* v. *Erie Cty.*, 629 F. App'x 41, 42 (2d Cir. 2015) (summary order) (no discussion); *Ciambriello* v. *Cty. of Nassau*, 292 F.3d 307, 318 n.3 (2d Cir. 2002) (same); *Urbina* v. *Port Auth.*, No. 15 Civ. 8647 (PKC), 2017 WL 3600424, at *3 (S.D.N.Y. Aug. 18, 2017) (same, and defendant was a "hybrid entity" rather than a "municipal entity").

Plaintiff also cites the Second Circuit's decision in *Kraebel* v. *N.Y.C. Dep't of Housing Preservation and Development*, 959 F.2d 395 (2d Cir. 1992), explaining that in *Kraebel*, the plaintiff brought a due process claim against the City of New York for depriving her of a property interest by delaying rent reimbursement payments to which she was entitled under state law. (*See* Pl.

Opp. 3).³  Significantly, however, the plaintiff in *Kraebel* challenged "established state procedures that cause[d] the delays and burdens which deprive[d] her of her property."  959 F.2d at 404.  Here, as explained above, Plaintiff's theory is that the NYCTA has *deviated* from municipal customs and policies.  That distinction is fatal to Plaintiff's claim that the NYCTA should be held liable for a constitutionally infirm policy or custom.

In short, Plaintiff has provided the Court with no grounds to hold the NYCTA, a municipal agency, liable for constitutional violations under § 1983.  For this reason, the Court does not address the NYCTA's remaining arguments for dismissal.

### 2. Plaintiff Is Granted Leave to Amend His Complaint

In his brief, Plaintiff requests leave to amend his Complaint to "clarify that the delay depriving him of his Due Process was caused by the practice of Defendant in delaying arbitration."  (Pl. Opp. 4).  Rule 15(a)(2) instructs courts to freely give leave to amend "when justice so requires."  *McCarthy* v. *Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007); *see also* Fed. R. Civ. P. 15(a).  "This permissive standard is consistent with [the Second Circuit's] 'strong preference for resolving disputes on the merits.'"  *Williams* v. *Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (per curiam) (quoting *New York* v. *Green*, 420 F.3d 99, 104 (2d Cir. 2005)).

---

3   The Court is also mindful that the *Kraebel* court did not address questions of municipal liability.  *See Kraebel* v. *N.Y.C. Dep't of Hous. Pres. & Dev.*, 959 F.2d 395, 403-06 (2d Cir. 1992).

14

The Court, like the parties, is cognizant of the fact that Plaintiff was given an opportunity to amend his Complaint following the pre-motion conference in this case. (*See* Pl. Opp. 4). That said, the Court recalls that Defendants did not raise an argument regarding *Monell* liability in their pre-motion letter (*see* Dkt. #12), and raised the *Monell* issue only briefly at the close of the pre-motion conference (*see* Dkt. #21 at 10-11). Indeed, at the pre-motion conference, the Court stated to Plaintiff's counsel, "you and I are both ever so slightly blindsided by that argument." (Dkt. #21 at 11:4-8). For this reason, the Court will grant Plaintiff leave to amend the Complaint.

The Court cautions Plaintiff, however, that before filing an amended complaint, he should consider more carefully the remaining arguments for dismissal made in Defendants' motion; he should research more fully his theories of municipal liability; and he should think more carefully about including a Fifth Amendment claim against state entities. Further, should the NYCTA in fact schedule Plaintiff's arbitration proceeding, the parties should inform the Court.

## CONCLUSION

For the reasons explained above, Defendants' motion to dismiss is GRANTED. Plaintiffs' Complaint is dismissed. The Clerk of Court is directed to terminate the motion at docket entry 18.

Plaintiff is hereby ORDERED to notify the Court on or before **July 10, 2020,** as to whether he will file an amended complaint.

SO ORDERED.

Dated:   June 23, 2020
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge